**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHIRLEY WHITESELL,<br><br>Plaintiff,<br>v.<br><br>REDNER'S MARKETS, INC.,<br><br>Defendant. | CIVIL ACTION NO. 3:25-CV-01382<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

On July 28, 2025, Plaintiff Shirley Whitesell ("Whitesell") initiated this action by filing a complaint against Defendant, Redner's Markets, Inc. ("Redner's") in which she alleges violations of the Americans with Disabilities Act ("ADA") (Count I), the Pennsylvania Human Relations Act (Count II), and the Family and Medical Leave Act ("FMLA") (Count III). (Doc. 1). Presently before the Court is Redner's motion to dismiss the complaint for failure to state a claim. (Doc. 11). For the following reasons, Redner's motion is granted.

## I. BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the complaint and taken as true for purposes of the instant motion.[1] (Doc. 1) Whitesell began working for Redner's sometime around September 2015. (Doc 1, ¶ 18). She was promoted to Prepared Food Manager in March 2018. (Doc. 1, ¶ 19). Whitesell alleges that she performed her job well and that she received "occasional praise and no justifiable discipline." (Doc. 1, ¶ 20). She received yearly

[1] Both parties submit documents attached to their briefs. In deciding a motion to dismiss, a court may consider undisputedly authentic documents attached as exhibits to the motion, along with documents integral or explicity relied upon in the complaint. *See Conductive Technologies, Inc. v. PNC Bank, National Ass'n*, 737 F.Supp.3d 270, 277 (M.D. Pa. 2024). Neither party objects to the other's use of exhibits and the Court will consider them here.

performance bonuses from 2018 to 2023 and awards in 2019 and 2020 for her managerial work. (Doc. 1, ¶ 21). Whitesell suffers from osteoporosis. (Doc. 1, ¶¶ 22-23). In December 2023, her osteoporosis caused her to suffer multiple fractures in her leg, and she required several surgeries. (Doc. 1, ¶¶ 22, 24). Whitesell requested and was approved for Family and Medical Leave; she was required to return to work on March 1, 2024—the day after the exhaustion of her leave. (Doc. 1, ¶ 27). As Whitesell was receiving treatment in early 2024, it became clear that she would be unable to return to work on March 1. (Doc. 1, ¶ 28). Because of her inability to return to work, Whitesell contacted the Store Director, Christopher Popis, and requested an accommodation for when she returned to work. (Doc. 1, ¶ 29). Whitesell was told she could not return to work until she no longer required an accommodation, as it was the company's policy to provide accommodations only to individuals who were injured at work. (Doc. 1, ¶¶ 29-31). She also contacted human resources representative Sue Rustinsky, who reiterated that Whitesell could return to work once her physician released her without any restrictions. (Doc. 1, ¶ 32).

Around February 2024, Whitesell was notified that her leave would soon run out and that Redner's would have to terminate her in order to place her on long-term disability. (Doc. 1, ¶ 33). After receiving Whitesell's request for a formal letter stating the reason for her termination, Redner's told Whitesell on March 21, 2024, that her employment had been retroactively terminated, with a termination date of March 1, 2024. (Doc. 1, ¶ 34-35). By May 2024, Whitesell had recovered to the point at which she was able to return to work with a "light-duty accommodation." (Doc. 1, ¶ 37).

Whitesell gave Redner's doctor's notes, which stated that she could return to work at full capacity on July 8, 2024. (Doc. 1, ¶ 39). Redner's posted on its website that a position for

Produce Manager opened in early July. (Doc. 1, ¶ 40). Despite the job posting on its website, when she contacted Redner's about returning to work on July 8, 2024, Whitesell was told that there were no open positions. (Doc. 1, ¶ 42). The job posting remained on the website after Whitesell was told that there were no vacancies. (Doc. 1, ¶¶ 42-43). Whitesell still applied for the position but was never contacted regarding her application. (Doc. 1, ¶¶ 43-44).

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S.

at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

## III. Discussion

In Count III of the complaint, Whitesell alleges that Redner's is liable for interference and retaliation under the FMLA. (Doc. 1, ¶ 74). The FMLA is a federal statute which entitles qualifying employees to up to "12 workweeks of leave during any 12-month period" due to qualifying events such as "a serious health condition that makes the employee unable to

perform the functions of the position of such employee." 29 U.S.C.A. § 2612 (a). Employers may be liable under the FMLA for either interfering with an employee's exercise of their FMLA rights or retaliating against an employee for exercising their rights. *See Ross v. Gilhuly*, 755 F.3d 185, 191-94 (3d Cir. 2014). Redner's avers that Whitesell fails to state a claim under either theory. (Doc. 13, at 12-17).

A. Interference

Redner's avers that Whitesell has not alleged facts about interference with an FMLA right or a benefit due to Redner's failure to provide. (Doc. 13, at 13). In response, Whitesell submits that Redner's interfered by failing to give her adequate notice of the amount of leave she was entitled to under the FMLA. (Doc. 15, at 11).

To establish a claim of interference pursuant to the FMLA, the plaintiff must show: "(1) that he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Ross*, 755 F.3d at 191-92 (citations omitted). The FMLA states that "eligible employees are entitled to 12 workweeks of leave during any 12-month period due to an employee's own serious health condition." *Ross*, 755 F.3d at 191 (citing 29 U.S.C. § 2612(a)(1)).

Under a claim for FMLA interference, the action is about "whether the employer provided the employee with the entitlement guaranteed by the FMLA." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 155 (3d Cir. 2017) (quoting *Callison v. City of Phila.*, 430 F.3d 117, 120 (3d Cir. 2005)). For an interference claim, "the plaintiff must show that FMLA benefits were actually withheld." *Capps*, 847 F.3d at 156 (citing *Ross*, 755 F.3d at 192). Department of

Labor's ("DOL") regulations obligate employers to provide employees with individualized notice of their rights under the FMLA. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 142 (3d Cir. 2004). Once an employer receives notice that an employee is taking FMLA-qualifying leave, the employer must:

> (1) within five business days notify the employee of his or her eligibility to take FMLA leave, 29 C.F.R. § 825.300(b)(1); (2) notify the employee in writing whether the leave will be designated as FMLA leave, 29 C.F.R. § 825.300(d)(1); (3) provide written notice detailing the employee's obligations under the FMLA and explaining any consequences for failing to meet those obligations, § 825.300(c)(1); and (4) notify the employee of the specific amount of leave that will be counted against the employee's FMLA leave entitlement, § 825.300(d)(6).
>
> *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 318 (3d Cir. 2014).

Pursuant to 29 C.F.R. § 825.300(e), "[f]ailure to follow the notice requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." When alleging deficient notice of the employee's rights under the FMLA, the main inquiry is, "whether the employer's failure to provide notice rendered the plaintiff 'unable to exercise [the right to FMLA leave] in a meaningful way, thereby causing injury.'" *Sowell v. Kelly Servs., Inc.*, 139 F. Supp. 3d 684, 692 (E.D. Pa. 2015) (quoting *Conoshenti*, 364 F.3d at 143). Unlike the ADA, the FMLA "does not require an employer to reasonably accommodate an employee's serious health condition." *Alifano v. Merck & Co., Inc.*, 175 F. Supp. 2d 792, 795 (E.D. Pa. 2001) (citing 29 C.F.R. § 825.702(a) & 29 C.F.R. § 825.214(b)).

The Court finds that Whitesell does not sufficiently allege an interference claim under the FMLA because she does not show that she was denied benefits to which she was entitled under the FMLA. *Ross*, 755 F.3d at 191-92. According to Whitesell, Redner's failed to give her notice of the amount of leave she was entitled to under the FMLA, thus interfering with

her FMLA rights. (Doc. 15, at 11). Arguing that an employer has an obligation to notify its employee of his rights under the FMLA, Whitesell relies on *Conoshenti v. Public Service Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir. 2004) and *Boles v. Wal-Mart Stores*, Inc., No. CIV.A. 12-1762 JLL, 2014 WL 1266216, at *16-17 (D.N.J. Mar. 26, 2014). (Doc. 15, at 11-12). In *Conoshenti*, the parties stipulated that there was deficient notice and that there were no facts suggesting that the defendant advised the plaintiff of his FMLA rights. 364 F.3d at 143. In *Boles*, the parties disputed whether the plaintiff received a notice of designation from the defendant. 2014 WL 1266216, at *16.

Neither case applies here. Even construing the allegations in the complaint in Whitesell's favor, Redner's provided Whitesell with adequate notice. Redner's sent a letter, dated December 19, 2023, (the "December 19 Letter") to Whitesell following up on the Designation Notice, stating, "If you fail to return to work on [March 1, 2024], the Company will conclude that you have abandoned your position, and your employment will be terminated." (Doc. 13-2, at 2). The December 19 Letter unambiguously states the circumstances if she failed to return to work on March 1. (Doc. 13-2, at 2). Whitesell argues that she contacted human resources before her leave expired to request accommodations upon her return to work. (Doc. 15, at 12). Unlike the ADA, a viable FMLA claim does not arise from alleging a denial of reasonable accommodations. *See Thomas v. St. Mary Medical Ctr.*, 22 F. Supp. 3d 459, 474 (E.D. Pa. 2014) (noting that although FMLA regulations refer to an employer's obligations under the ADA, "they do not incorporate those obligations into the statute and allow an FMLA interference claim to include allegations for potential ADA violations") (citing 29 C.F.R. § 825.216(c)). The Court also rejects Whitesell's argument that "she was under the impression that she could extend her leave if necessary." (Doc. 15, at 12).

The FMLA does not guarantee the ability to extend FMLA leave beyond what the statute provides. *See Wevodau v. Pennsylvania Off. Of the Att'y Gen.*, 227 F. Supp. 3d 404, 409 (M.D. Pa. 2017) (acknowledging that the FMLA leave of twelve weeks has been interpreted strictly and that "employees are not entitled to the protections of the FMLA after the statutory leave has expired, even where the employee has received permission to extend their leave from the employer"); *see also Hofferica v. St. Mary Med. Ctr.*, 817 F. Supp. 2d 569, 577 (E.D. Pa. 2011) (finding that an employer may terminate an employee after taking leave permitted by the statute, but the employer may terminate the employee if the employee cannot return to work after twelve weeks).

Whitesell fails to sufficiently allege the fifth element of her FMLA interference claim. *Ross*, 755 F.3d at 191-92. Accordingly, Redner's motion to dismiss the interference claim under Count III is **GRANTED**. (Doc. 11).

B. <u>RETALIATION</u>

Redner's also argues that Whitesell's retaliation fails because the complaint does not sufficiently plead causation between Whitesell's exercise of her FMLA rights and the alleged adverse employment action. (Doc. 13, at 15). In response, Whitesell avers that Redner's engaged in a "pattern of antagonism" after she exercised her FMLA rights and provided inconsistent reasons for her termination. (Doc. 15, at 14).

To establish a claim under the FMLA for retaliation, a plaintiff must establish that: "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302-03 (3d Cir. 2012) (citing *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508-09 (3d Cir. 2009)). In order to establish the third

element, causation, "a plaintiff generally must show either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (internal quotations omitted). When determining whether a causal link exists, it "must be considered with a careful eye to the specific facts and circumstances encountered." *Budhun*, 765 F.3d at 258 (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir. 2000)). Employers are prohibited from "discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." *Capps*, 847 F.3d at 151. (citing 29 C.F.R. § 825.220(c)).

In December 2023, Whitesell applied for and received approval for leave under FMLA with an anticipated return-to-work date of March 1, 2024. (Doc. 1, ¶ 27; Doc. 13-2, at 2). After learning that she would not fully recover by March 1, 2024, Whitesell requested a "light duty accommodation" upon her return. (Doc. 1, ¶¶ 28-29). Her doctor indicated that she was not ready to return to her position at full capacity until July 8, 2024. (Doc. 1, ¶ 39). At this stage, the Court is bound to the facts as alleged in the complaint. *See Jordan*, 20 F.3d at 1261 (noting that courts must accept all facts in the complaint as true while evaluating a Rule 12(b)(6) motion). The FMLA does not require employers to allow employees to extend their leave beyond 12 weeks or for indefinite amounts of time. *See Thomas*, 22 F. Supp. 3d at 474. Whitesell alleges she was unable to return to work when her leave expired. (Doc. 1, ¶¶ 27-33). Given these allegations, the Court finds that she was terminated because she could not return to work, not because she sought FMLA leave. Like the interference claim, the retaliation claim cannot latch onto claims alleged under the ADA. *See Thomas*, 22 F. Supp. 3d at 474.

The Court does not find that Whitesell sufficiently pleads a causal relationship because her termination occurred after her leave had expired, when she could not return to work. *Thomas*, 22 F. Supp. 3d at 474 (dismissing an FMLA retaliation claim because plaintiff, for purposes of causation, failed to allege that she was able to return to work); *see also Hofferica*, 817 F. Supp. 2d at 577 (noting that a court must inquire whether the evidence, viewed entirely, could suffice to infer causation while analyzing a retaliation claim). Accordingly, Redner's motion to dismiss Whitesell's retaliation claim under Count III is **GRANTED**. (Doc. 11).

## IV. Leave to Amend

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (nonprecedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Whitesell's claims under may be cured by pleading facts that support a plausible inference that Redner's denied FMLA leave and that show Redner's terminated Whitesell because she exercised her FMLA rights. *See Cooper v. Cnty. of York*, No. 1:21-CV-01440, 2022 WL 1810978, at *2 (M.D. Pa. June 2, 2022); *see also Darby v. Univ.*, No. CV 15-4207, 2016 WL 3762742, at *5 (E.D. Pa. July 12, 2016). Accordingly, the Court grants Whitesell twenty-one days to file an amended complaint.

## V. Conclusion

For the foregoing reasons, Redner's motion to dismiss Count III is **GRANTED**. (Doc. 11). Count III is **DISMISSED without prejudice**. (Doc. 1, ¶¶ 68-74). Whitesell is

**GRANTED** leave to file an amended complaint curing the deficiencies outlined herein, within twenty-one days of the date of the accompanying Order.

**BY THE COURT:**

**Dated: September 2, 2026**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**